Good morning, and welcome to the Ninth Circuit. Glad to be joined by my colleague, Judge McCune, and we are so glad to have the assistance for a couple of days this week from Judge Boggs, who has generously helped us meet our calendar. We have two arguments set today. We just ask you to pay attention to your time. I know we have Mr. Piven arguing by video. Let us know if you want to reserve time for rebuttal, and just try and sum up as time is expiring and we'll go smoothly. We may take you over with our own questions, but we'll try and keep this within the time limits today. The first case is United States v. Woolem, case number 23-2231. We'll hear from Mr. Piven. Thank you, Your Honor. Good morning. My name is Roger Piven, and I represent Mr. Daniel Woolem. I would ask that I have five minutes reserved for rebuttal, please, Your Honor. Sure. Thank you very much. Daniel Woolem is a 57-year-old man with no prior convictions until this matter, who is serving a 19.5-year sentence, of which he has done approximately seven, and has approximately 10 more years to serve. As I said, this is his only felony conviction. This sentence, as a first offender, was the high end of the guidelines and a nonviolent drug offense, drug offenses in this case. Mr. Woolem was represented at the time of sentencing by an individual, Mr. Orr, who was not appointed by the court to represent him, who had no membership. So Mr. Woolem consented to representation by him, correct? By Mr. Orr. I would say that that consent was not valid, and I would say that that's part of my argument. I can respond to that now. Yeah, that's what I want to know. Why is his consent not enough to sort of waive this argument? I would say that he didn't knowingly and intelligently consent, therefore it is not consent. He was not informed. He had never met Mr. Orr before. He was sitting at council table waiting for the judges to come out. He did not know that Mr. Orr was not a member of the CJA panel. He did not know anything about what Mr. Orr had done in preparation, and the consent was not knowing. The court did not know. Mr. Orr had never met him. Asked no questions as to why Mr. Johnson, his court-appointed lawyer, was not there, had abandoned the sentencing hearing, and did not know through any experience how these matters worked. May I ask you one thing that I'm concerned about in this appeal? Of course, everything was affirmed on direct appeal, but how is it that a CJA plan all of a sudden turns into some kind of mandatory requirement? Well, I would answer that by saying that it was a CJA plan, and the Eastern District of Washington did mandatorily, by the use of the word shall, mandatorily require that lawyers representing Mr. Woolham be members of the panel and shall have the requisite knowledge and experience to take that obligation. There is an exception. Is the position that he wasn't so let's say that the district court made a procedural error by not putting him on, I guess you put him pro hoc on the CJA panel. Is there an argument that he never could have done that here? He could have done that. I mean, that's what I'm wondering. Is this a procedural error by the district court, in your opinion, or is this a substantive error because had he inquired as to his qualifications, he never would have appointed him to the CJA? Your Honor, in exceptional circumstances, our CJA rules say they can, the court can appoint a lawyer on a pro hoc viche. It goes on to state. I didn't read it as exceptional circumstances. I guess that's kind of part of what I'm asking, but it just says when the district judge presiding over the case determines, it doesn't, I mean, in the interest of justice, judicial economy, or continuing representation, is your position that had he done that analysis, he would not have appointed Mr. Orr pro hoc viche? Yes, because the rules in the CJA plan says that the CJA, the lawyer seeking to represent has to have the same qualifications with experience, training, and knowledge that would be required to be on the panel itself. Had that occurred and a number of other things, had they occurred by the judge asking questions, we may not be here on this issue. It's kind of a curious procedural setup because we have everything has been affirmed substantively by the Ninth Circuit. Now you're saying there's this challenge to the gentleman who is not on the CJA panel. So is the relief you seek is that there would be a resentencing with a new CJA attorney? Yes. Or a new attorney when they're hired at CJA. Right, either. And in doing that, what would be the impact of the Ninth Circuit's decision on the substantive appeal? Well, we have alleged in this petition that he received ineffective assistance from his appellate lawyer because that wasn't brought up. The only thing the appellate lawyer brought up was that there was ineffective assistance, which is something that is improperly brought before the Ninth Circuit. Well, that brings me to the next question then. Let's assume, I know you have your two or three challenges under ineffective assistance of counsel, but let's assume those are not successful. Would you still have a procedural claim with respect to the CJA counsel and what would it net in the end? I'm just trying to play it out if it were to come back to the district court. Well, if I understand your question, Your Honor, what we are asking, let's leave it simply to the issue of sentencing. If, in fact, there was error, whether by ineffective assistance and or the claim of not being a member of the panel, then it would go back to the court for sentencing. My hypothetical was, let's assume that the ineffective assistance of counsel as part of your habeas is not successful, that it fails. Well, my argument would be a little stronger on the ineffective assistance at the appellate level because these matters were never before the appellate court on the direct appeal. I don't think it should bar . . . At the end of the day, what's the prejudice here? Can you identify an argument that would have been . . . As Judge McKeown points out, none of the arguments ended up being successful, so it's not exactly like there was an error, at least it was identified below. So what, in your opinion, would a CJA attorney have done that Mr. Orr didn't do that would have changed the outcome here? Well, I would probably include Mr. Johnson as well because he was the CJA-appointed lawyer. But what would . . . Let me go back and say at the beginning of the sentencing hearing, the judge said that he had not yet made up his mind as to sentence. In my opinion, if it were to go . . . What happened was that there was no . . . mandatory minimum 10 years and the finding of what the guidelines were. He did not understand that obstruction was already included in the guideline sentence and it was not a reason for going above it. That's one very . . . But that gets into your ineffective assistance. You raised that in the ineffective assistance of counsel. So if we say that wasn't ineffective assistance of counsel, I guess I'm still left with . . . I don't know. These claims seem to rise or fall together. They're very entwined together, but the denial, I would suggest, of one aspect of it does not carry over and say there was no ineffective assistance and, therefore, denial of due process as a result. It's our opinion that the CJA issue stands apart from the ineffective assistance. It is intertwined with it, but the decision could be made without ineffective assistance. So is your argument that the defendant here could have rejected the counsel because he was not on the CJA panel? Yes. But instead, let's assume he had that right, maybe he wasn't informed of it, but he chose to say, I have talked to him and I accept him as counsel, did he not? Or Mr. Orr said, we have talked. Woolam did not dispute that and agreed that he would have him as counsel. They had talked, but when you put that in the context of the events, they had talked in the limited minutes between when Mr. Woolam was brought into the courtroom and sitting at counsel table with everybody around, such as the prosecutor and so forth. That isn't what I would call a conversation between a lawyer and his client. Mr. Woolam had no idea who Mr. Orr was. They had never talked prior to that. He had never been in court before. He was not informed by the court why Mr. Johnson wasn't there, why Mr. Orr was, who he was. And a defendant in a fundamentally fair hearing should know who he's consenting to have represent him at a critical stage of this proceedings where the high end was set, which was a significant difference between approximately 15 years and approximately 20 years. And his consent simply wasn't based on any knowledge of the circumstances going around in this matter at that time. Do you want to reserve? I know you'd ask for five minutes unless there's other questions. What do you want to reserve for rebuttal? You have two and a half minutes left. Two and a half minutes, I guess, or five minutes is what I asked for at the beginning. Well, we'll give you two and a half. Two and a half is fine. You'll be just fine. Thank you. Thank you, sir. Good morning, Your Honors. David Herzog for the United States. May it please the court. The court is correct about the prejudice aspect to this. And in this case, the court has more knowledge than it usually does because Judge Bastian, who would have been the person resentencing if the case were to be sent down, said, and this is at ER 11, no other action would have resulted in a more favorable sentence for the defendant. So the court, sometimes the court does not know. It has to predict whether or not it would be a different result on remand. But here, the court knows that. Judge Bastian presided not only over the trial and the sentencing, but a fully contested evidentiary hearing on these issues and said, look, essentially Clarence Darrow couldn't have helped this guy. Neither Mr. Johnson nor Mr. Orr's representation would have changed the outcome. But that analysis, I guess, is the same for both claims here, both the CJA and the ineffective assistance of counsel, meaning if we did find that there was ineffective assistance of counsel, would that necessarily, I mean, I guess that's what I, would that necessarily mean that there was a CJA violation? It seems like it doesn't necessarily mean that because you could, theoretically we could find ineffective assistance of counsel, but still go back and say either it was just waiver or it just isn't a mandatory right. I think Your Honor is exactly correct. I do think they are in that sense disparate. One is a due process right. One is the Sixth Amendment effectiveness of counsel right. So with regard to just the argument that there is a mandatory liberty interest in the CJA panel appointment, I think the question for the court is articulated in- Are there other examples where we have recognized constitutional rights to counsel that go beyond the Sixth Amendment? I don't think so, Your Honor. The government's position is that- The Sixth Amendment encompasses the right to counsel. I mean, I guess, what if this were mandatory and, you know, you set up this whole construct, you know, could, I guess you could still do it and say it was a violation of a statute, but that wouldn't necessarily mean that it was a violation of the due process clause because it would be odd to interpret the due process clause to grant more rights than the Sixth Amendment. Yes, Your Honor. I think the last thing the court said is right on point. The Sixth Amendment is the protection of the defendant's right to counsel. It is enforced through Strickland. But is that not, in effect, a floor? There could be additional rights, correct? And one, if one had a mandatory procedure by statute, for example, that could go above and beyond the Sixth Amendment, no? Yes, I think that is correct, Your Honor. So the question, I do think the court does need to grapple with the question, is there a liberty interest in the CJA panel appointment? Because that would still be able to be enforced. If it were a liberty interest, it could be enforced under the due process clause. I think that's correct, Your Honor. I do think that's true. And so I would turn the court to the Supreme Court's, or the D.C. Circuit at least, the court's evaluation of when is there a liberty interest. And here, there are three cases in the briefing that I think make the point. The first one is Thompson, Kentucky Corrections v. Thompson. The question is, does the law give the decision-maker discretion? Is the discretion of the decision-maker cabined? And here, and this is at ER 350, the court was referring to this earlier, this is the CJA panel plan. The judges have discretion to appoint someone who is not on the panel for representation under those circumstances. Can you address this question? I mean, opposing counsel had sort of said this is extraordinary to not. Is that true? I don't know how this works in practice. Is it extraordinary, or does this happen more often? I would assume this happens more often than he was alluding to, but I don't know. Well, I wouldn't necessarily join that point. Because in the regular course of things, the CJA attorney is the one who's present. This was a circumstance where he was unable to be present. So I don't think the sort of you want to call it the accidental tourist attorney who's sitting there gets appointed. I would assume in your experience that's not the case. It certainly is, and I do practice in this district, and I will say it is certainly the case that when counsel cannot be present, other counsel can cover as standing counsel. That happens all the time. That's all throughout the case law. With regard to this particular circumstance, I do think this one was extraordinary. Counsel's grandmother died immediately before the hearing, and he could not be present. Also, as the court knows from the record, Mr. Johnson, the CJA lawyer, and Mr. Orr, the not-yet-CJA lawyer, both met and consulted with the family, which was their conduit to dealing with Mr. Woolham. I'm sorry. They both did what? Pardon me, Your Honor. They met with the family. They discussed with the family that Mr. Johnson's grandmother had died, that he had a family circumstance that required him. And what Mr. Johnson said in the evidentiary hearing is, what I said was, you can have me later or you can have Mr. Orr now. And it's not clear from the record whether the defendant himself affirmatively said the words, yes, I agree to that, or whether his family represented that to the lawyers on his behalf. But the argument that the defendant didn't knowingly consent to Mr. Orr that day I think is belied by the record. There's not a problem that the judge was insisting that the hearing go forward on this very day. Oh, that's correct, Your Honor. And I will say, certainly having been in front of Judge Bastian many times, if anyone had said, Judge, we need to put this over so Mr. Johnson can be here, whether the prosecutor or the defense or the defendant's family, he would have put it over. I mean, I don't think there's any question about that. But what's clear from the record is the defendant wanted to proceed. He wanted to get his sentencing over with and proceed to his appeal. And that's borne out in the evidentiary hearing. All of the counsel whom the court credited with being credible said, Mr. Johnson, Mr. Orr both said he wanted to go forward. And so I do think I agree that was his consent to Mr. Orr, his status as a non-CJA appointed lawyer, that I think was unknowing. I don't think there's anything in the record that shows that Mr. Woolham knew that Mr. Orr was not on the panel. So did Judge Bastian didn't go through this process because he, I mean, was there a suspicion that, look, Mr. Orr isn't going to satisfy these standards? Although, I mean, one of the standards is the interest of justice and judicial economy. Although, well, but then it also says, should it possess such qualities as would qualify the attorney for admission, would Mr. Orr have met that last standard or not? Yes, he would. And the court knows that from the evidentiary hearing because at the evidentiary hearing, Mr. Orr told the court, here are my qualifications. And what they were, were, oh, that he had been a lawyer for four and a half years. He had been retained in federal court in the Eastern District. The record's clear on that. He had covered other CJA cases for Mr. Johnson. He had reviewed the file and he'd made and then in practice, he made the same arguments Mr. Johnson made, but made them better. Mr. Johnson's 10-page sentencing. So why didn't the judge just go, I mean, wouldn't, we wouldn't be here, right, if, at least on this issue, if the judge had just asked those questions at that time? I think Your Honor's correct on the consent issue. If the court had said to Mr. Orr, how long have you been practicing? Have you ever done CJA work before? Have you ever stood in a federal sentencing before? And Mr. Johnson, Mr. Orr had answered those questions. Then Mr. Woolham could have said, judge, I insist on Mr. Johnson today. That is certainly true. And I think the judge would have had discretion to say, no, we're proceeding today because there is no mandatory right to CJA counsel because the discretion involved. But so, yes, I agree. In a perfect world, Judge Bastian would have stopped the hearing and said, Mr. Orr, please give me your qualifications. And then under the CJA plan, and again, this is ER 350, he could have done what the plan says specifically, which is admitted Mr. Orr Pro Hoc Vitae to the panel and appointed him on the spot to represent Mr. Orr. He did half of that. He appointed him essentially to represent Mr. Woolham, sorry, Mr. Woolham in the hearing. Well, I think the first line of argument that Mr. Woolham's counsel makes is that the CJA basically says, shall be selected from a panel of attorneys under the CJA process. And he's relying on that mandatory language. Yes. And let's assume that that created some due process. Right. Where would you go from there? I think the court would have to look at the when is a mandatory liberty interest created by the statute. And the cases for that are Thompson, Valdez and Doe. Doe, the D.C. Circuit case about 994 N, the sentencing guidelines provision. That one also has mandatory language. All of them do. They all have the mandatory language, which is shall. In that one, it is the commission shall ensure that the general provisions of the guidelines are met. And the court said there is no mandatory interest there because the rest of the statute is essentially permissive, that there's it's it there are the language shall is in their exception. And then you pull the rug out from under it with all the exceptions or there's a lot of permissive conduct permitted. Yes, your honor. And in the heart, there is the discretion of the decision maker. And that's Kentucky Corrections versus Thompson. Does the decision maker have discretion under the statute? And that's why in the Valdez case, which is the Alaska phone, you have the inmate shall have reasonable access to a phone. Mandatory language shall. But then the reasonable access is enough discretion to say there is no liberty interest there because the defendant doesn't have a reasonable expectation that that will be enforced, that the reasonable conditions will be what he wants. And here, I think the equivalent would be that for Mr. Woolham, he did not have a reasonable expectation that under the extraordinary, the extraordinary circumstances or interests of justice, if his lawyer had a family emergency, he didn't have a reasonable expectation that his lawyer would be CJA appointed rather than Strickland qualified. He did have a reasonable expectation of the Sixth Amendment right, effective representation, but he did not have a reasonable expectation of the of the nicety, essentially, of the appointment to the panel, because I do think the record reflects that Mr. Orr was qualified. Would it have been different if he had, if it had come out later that he wasn't, wouldn't have been qualified as an attorney for admission to the CJA panel? I think Strickland would be the test. Did he give him effective representation? And here, I think the record makes very clear he did. So in that sense, it answers the court's earlier question. Which comes back to no prejudice, basically. Essentially, it is no prejudice. And I think and I would just submit to the court that one way to get to that analysis, to look at Kentucky Corrections versus Thompson, which says there's a two step inquiry. One, is there a liberty interest? And two, what are the procedural? What is the process attendant to that deprivation? And here the process is Strickland. So even under the the liberty interest analysis in Thompson, the process attendant to the alleged deprivation of liberty interest is the right to effective counsel. And that's Strickland. So the government's position is there is no mandatory liberty interest. There's too much discretion in the statute. In this case, the court exercised that discretion in essentially an exigent circumstance of counsel having a death in the family. So there's no mandatory liberty interest. If there were a mandatory liberty interest, the procedure attendant to the deprivation is Strickland. And overall, because Judge Bashin said, I would not have sentenced this man differently no matter what the lawyer said. There is no prejudice there. And the defendant can't remember. Isn't that last statement at least a little bit odd versus the judge apparently having said at the actual sentencing, well, I haven't made up my mind yet. Yeah. I'll say to the court, Judge Bashin says that at the beginning of every sentencing hearing. But he also said, I've read Mr. Johnson's papers and he I think there's some dispute over that raised by the defense. Mr. Johnson filed a 10 page sentencing position at E.R. 316. The court said, I've read the memo and the obstruction enhancement, which is the heart of the two point enhancement. That was in Mr. Johnson's papers. Essentially, the heart of his brief is he didn't perjure himself. Then Mr. Orr makes that same argument and goes further to argue unwarranted disparity, lack of criminal history, et cetera, and makes a pretty strong argument. The strongest argument could be made with the client that he had, that 10 years was the right sentence. So he made the same exact argument, which was the mandatory minimum 10 years is appropriate. And so I would submit to the court, Judge Bashin, I think like all good district judges, goes into every sentencing with an open mind. But having read the paper, the end of it, he now knows that by the end of it, he wouldn't have changed his mind. By the time he got to the evidentiary hearing, he was in a position to say that. And don't forget, your honor, this judge sat through this man's trial where and also Mr. Willem, in terms of the credibility determination, admitted at the evidentiary hearing that he lied at trial. He took the stand and lied. So I think Judge Basin was in a position to say what the lawyers are saying is credible, what the defendant is saying is not credible. And then by the end of the evidentiary hearing, then having a complete record before himself, he was in a position to say, Mr. Orr, nothing Mr. Orr would have done, even had he been appointed, would have changed the outcome here. And that's the prejudice prong. Unless the court has further questions, I think that's essentially the government's position. I'm happy to walk through the other ineffective assistance claims. I think they are deeply flawed as to both Mr. Hernandez with regard to the conflict and the plea negotiations. The defendant said, I wouldn't have taken the plea because I wasn't going to cooperate. So I think that is a way. And then for Mr. Whitaker on appeal, he has the ability as appellate counsel to winnow out bad issues. I think that's black letter law. So in sum, the government's position is there was no liberty interest created by the CJA statute. There was enough discretion in the statute and the judge exercised that discretion. Mr. Willem did not have a reasonable expectation that he had to have a appointed panel lawyer rather than a competent lawyer. And he did have a competent lawyer with no prejudice. Thank you. Thank you for your argument. We'll give you time for rebuttal. Mr. Piven, I don't think your microphone is on. Thank you. Can you hear me now? Yes. Yes. Okay. Thank you. When the government indicated that Mr. Orr would have met the qualifications because he had been in federal court before, that's not what the record is. At the time, Mr. Orr had never had a federal case, had never appeared in any federal matter. And there was nothing on the record to show he had any experience. Wait, wait, wait. The times that he stepped in for Mr. Johnson all happened after this? This was the first time he'd ever stepped in for Mr.  Our position is that when we looked for this information on the ECF, he does not appear anywhere as attorney of record. This idea of standing counsel pervades this entire case, and it's simply not known what that means. As to the waiver of Mr. Woolham and the family and him saying it's okay in advance of the hearing, that's not what the record said either. Mr. Woolham wasn't asked, but what the lawyers for what Mr. Johnson, Mr. Orr said that the family said it's okay. And that's not a waiver by a family member speaking on behalf of Mr. Woolham. So that would not persuade as to whether or not he waived. It's an interesting question of prejudice as it was developed here, because let's assume the court found that there was ineffective assistance. So you do under Strickland, you look to see if there is prejudice. But if we're going to say, well, the court at that time said, that's the sentence that, you know, that I think is fair. Then even with the prejudice, this court cannot be asked to judge what a judge will do in the future with other circumstances. Otherwise, ineffective assistance means nothing. And on that point, if the CJA act in our district doesn't mean that you have to be qualified, any person, even a non-lawyer, if he's effective or she's effective, would not be an error. There's no recourse to it. We simply have no fundamental fairness in having the, you know, having a qualified lawyer handling the case. In a private situation, private hire, that's not even comes up. But here, and the case law is in my brief that says it is mandatory, and there is a mandatory result. And I won't, I don't have time to bring it up, but that's in the brief in the case law where that does create the liberty interest that doesn't require showing prejudice. And I would direct the court to that part of the brief, and I've gone over my time. Yeah, no, thank you. Thank you to both counsel for your arguments in the case. It's been helpful to the court, and the case is now submitted.
judges: Boggs, McKEOWN, NELSON